Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or to amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Defendant-employer was self-insured with Crawford 
Company as the Servicing Agent.
4. Plaintiff's average weekly wage was $397.81.
5. The following medical records were stipulated into evidence by the parties:
 a. Medical records of Dr. John Tuttle including progress notes, graph and lab reports.
 b. Medical records of Dr. Jeffrey C. Cook; report and charges.
 c. Medical records of Dr. Raymond C. Sweet; patient evaluation, letters to Dr. Cook, prescription and work slips.
d. Radiology report from Mercy Hospital.
 e. Record treatment summaries from Concord Free Clinic.
 f. Cabarrus Orthopaedic and Sports Medicine letter to Dr. Lockhart from Dr. Sellers.
6. The issues to be resolved are:
 a. Did plaintiff sustain an injury by accident or by specific traumatic incident to his back on or about December 20, 1993?
 b. If plaintiff sustained a compensable injury by accident, to what benefits is he entitled?
********
Based upon all of the competent evidence of record the Full Commission adopts the findings of fact of the Deputy Commissioner, with minor modifications and finds as follows:
FINDINGS OF FADO
1. Plaintiff is a fifty year old divorced male who has been employed mainly as a laborer. He has limited ability to read and write. Most recently, plaintiff has operated a lawnmower service in cooperation with his son.
2. On or about December 15, 1993, plaintiff had been employed as a "B-man" for defendant-employer. He had been so employed for approximately three years. Plaintiff's job duties included cutting trees, trimming trees, cutting brush and feeding the brush into a chipper. Plaintiff was occasionally required to climb a tree although the trimming of trees was usually performed from the bucket of a truck. Plaintiff used chain saws, circular saws, hand saws or pruners to do trimming. On the ground plaintiff cleared brush of varying sizes and dragged it from where it was cut to be fed into the chipper. Brush commonly ranged in size up to 150 pounds. Plaintiff worked in a two man crew with Franklin Earnhardt as his foreman. Mr. Earnhardt was called the "A-man".
3. Prior to working for defendant-employer, plaintiff had worked at a mill for fourteen years, at Davey Tree Company and for ten years at Williams Electric.
4. On or about December 20, 1993, plaintiff and Mr. Earnhardt were clearing a right-of-way near Clover Road in Cabarrus County.
5. On or about December 20, 1993, plaintiff slipped and fell onto his buttocks while performing his duties as a "B-man". Mr. Earnhardt did not see any accident since he was facing in the other direction, but did view plaintiff sitting on a piece of dead pine. Mr. Earnhardt inquired as to whether or not plaintiff had been hurt and the plaintiff responded that he did not know. Neither plaintiff nor Mr. Earnhardt considered the injury serious at the time. No injury was reported to a supervisor by either plaintiff or Mr. Earnhardt.
6. Plaintiff felt some transitory back pain and numbness of his legs but got up after his fall and continued working. Plaintiff had a history of pain and numbness (neuropathy) in his legs related to his diabetic condition. Plaintiff did not mention having any numbness in his legs to Mr. Earnhardt until two to three weeks later.
7. One of Mr. Earnhardt's duties as the "A-man" was to complete weekly timesheets for the crew. During December 1993 and January 1994, Earnhardt signed timesheets indicating that both he and plaintiff had worked accident free.
8. Subsequent to December 15, 1993, plaintiff continued to work at full duty for defendant-employer.
9. On December 7, 1992, more than a year before his fall, plaintiff presented to Dr. Tuttle, his family physician, with urinary frequency, disorientation and discomfort in his legs and feet. At that time, plaintiff had not been taking his diabetes medication and his blood sugar, cholesterol and triglycerides were elevated. Dr. Tuttle diagnosed plaintiff with neuropathy in conjunction with his diabetes.
10. On January 27, 1994, plaintiff presented to Dr. Tuttle seeking a prescription for DiaBeta and also complaining of left leg pain and numbness in his left foot. Plaintiff did not relate to Dr. Tuttle any work-related injury. Plaintiff stated at that time that he had been smoking two packs of cigarettes a day. Dr. Tuttle diagnosed low back pain and sciatica symptoms as well as a left foot drop denoting a loss of strength in the ankle flexors consistent with diabetic neuropathy.
11. In February, 1994, plaintiff presented again to Dr. Tuttle complaining of left leg and foot discomfort. Dr. Tuttle prescribed anti-inflammatories and suggested an orthopedist. However, plaintiff wished to defer seeing an orthopedist at that time.
12. On May 25, 1994, plaintiff again presented to Dr. Tuttle with complaints of left leg and foot pain. Dr. Tuttle prescribed Prednisone for plaintiff at that time and recommended that plaintiff see an orthopedist. Plaintiff did not mention any work-related incident or injury to account for his leg and foot pain, nor, did he mention having seen any other physician or medical specialist.
13. Plaintiff presented to Dr. Jeffrey Cook, a chiropractor, on April 27, 1994. At that time, plaintiff reported that he had incurred an injury to his back while at work with defendant-employer in January. The following day plaintiff returned and supplied a December 20, 1993 date for the injury to his back. Plaintiff stated that he had fallen while working for defendant-employer and had felt immediate pain and numbness in his back and left leg.
14. Dr. Cook diagnosed plaintiff with chronic sciatic radiculopathy. Dr. Cook's examination of plaintiff's spine and erector muscles supported this diagnosis. His erector muscles were in spasm and he had trigger points and muscle nodules were tender to the touch. His quadratus lumborum muscles running from L1 to L5 were also in spasm and he exhibited myofacial trigger points. Plaintiff's left leg raising was positive while right leg raising was negative.
15. Dr. Cook prescribed various exercises and water treatments for plaintiff from April 27, 1994 through December 15, 1994, when plaintiff's symptoms were greatly improved and Dr. Cook released him from care as being at maximum medical improvement.
16. Dr. Cook was not aware that the treatment provided to plaintiff was to be considered a Workers' Compensation related injury until June 23, 1994.
17. Plaintiff presented to Dr. Raymond Sweet, a neurosurgeon, on June 15, 1994 as a result of a referral from Dr. Cook.
18. Plaintiff related to Dr. Sweet that he had fallen at work onto his buttocks and had seen his family doctor as well as Dr. Cook. Dr. Sweet examined plaintiff and found straight leg raising tests negative bilaterally. Dr. Sweet prescribed an MRI and reviewed the films as well as the results of an EMG test submitted to him by Dr. Cook. Dr. Sweet diagnosed plaintiff as having mild degenerative disc disease at L4-L5 without a ruptured disc, pinched nerve or stenosis. Dr. Sweet found plaintiff had a slight spondylosis but no surgical lesion. Plaintiff had marginal boney degenerative changes noted at L3-L4, L4-L5 and questionably at L5-S1. Dr. Sweet's diagnosis was degenerative disc disease at L4-L5 and low back strain with some referred pain to the leg. Plaintiff's numbness to the left leg and foot could be attributed to his diabetic condition.
19. Dr. Sweet took plaintiff out of work initially on June 14 but released him to return to work on June 21, 1994. Dr. Sweet last saw plaintiff on August 3, 1994 and gave him some modified work restrictions with lifting only up to forty-five pounds and moderate bending, crawling or climbing.
20. Dr. Sweet's final diagnosis was that plaintiff had sustained a back sprain consistent with the injury which plaintiff described as having occurred while he was working for defendant-employer. Plaintiff never returned to Dr. Sweet.
21. Plaintiff stopped working for defendant-employer in June 1994 and never returned. Plaintiff did not advise his supervisor, Joe Keaner or Mr. Keaner's assistant, Mark Nunn of any work-related incident until May 15, 1994. Plaintiff's first written notice of an injury provided to defendant-employer was the Form 18 filed on June 17, 1994.
22. Plaintiff presented to Dr. Frank B. Sellers on January 12, 1995. At that time plaintiff complained of pain in his neck, numbness in his arms and pain and weakness in both legs. Upon examination, plaintiff had negative straight leg raising. An MRI of plaintiff's back demonstrated early disc disease at L4-L5 but no evidence of pressure on a nerve. Dr. Sellers diagnosed chronic low back pain and gave plaintiff samples of Relafen and called in a prescription later. It was Dr. Sellers' opinion that plaintiff's symptoms would be extremely difficult to relate to a December 1993 injury and were more likely related to arthritis of the back. Dr. Sellers' opinion differs from that of Dr. Sweet's only on the issue of causation. Plaintiff's medical records and the diagnostic opinion of all medical experts support a finding that plaintiff suffered from degenerative disc disease, arthritis, and diabetes with related diabetic neuropathy.
23. Plaintiff has been able to return to work by virtue of operating a lawn maintenance business with his son, and is able to take care of a number of yards at any one time without complaints of back related problems.
24. Plaintiff's testimony regarding his fall while working for defendant-employer in December is credible. Plaintiff may indeed have fallen. However, he sustained no injury from such a fall. He reported no unusual pain or any pain different from that he had reported as early as December 7, 1992 to Dr. Tuttle, his family physician. Moreover, he was not prevented from earning wages and did not suffer from any diminished capacity to work his normal work day of strenuous labor until months later.
25. The greater weight of the competent, credible medical evidence of record indicates that plaintiff fell on December 20, 1993, but he sustained no injuries from the fall. Greater weight is given to the testimony of Dr. Sellers than Dr. Sweet on the issue of causation. According to Dr. Sellers it was unlikely a fall in December, 1993 could be related to or be consistent with plaintiff's symptoms six months to a year later. Dr. Sellers, a specialist and board certified in orthopaedic surgery, diagnosed plaintiff as having chronic low back pain related to arthritis. This diagnosis is consistent with the diagnoses of Dr. Cook and Dr. Tuttle. Even if plaintiff sustained an injury on December 20, 1993, it is more likely than not that such a minor acute episode or sprain to his back would have resolved by June, 1994, or certainly by December, 1994.
26. Plaintiff was not completely asymptomatic before his fall, on or about December 20, 1993. His complaints regarding his back and leg were consistent with his degenerative disc disease and diabetic neuropathy as diagnosed by Dr. Tuttle, Dr. Cook and Dr. Sellers.
27. Any pain which plaintiff experienced in May 1994 or subsequently is unrelated to a fall at work in December 1993. Plaintiff's complaints are consistent with a gradual onset of back problems. His pain built up over a course of months. The accident or falling incident and the onset of pain did not occur contemporaneously during a cognizable time period.
28. In accordance with Dr. Sellers' diagnosis, plaintiff's inability to work or to earn wages subsequent to May 18, 1994 was not caused or related to a muscle sprain sustained in December 1993, but rather caused by arthritis and degenerative disc disease. In addition, diabetes may have contributed to plaintiff's symptoms.
********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Back injuries which occur gradually over long periods of time do not constitute specific traumatic incidents. Richards v.The Town of Valdese, 92 N.C. App. 222, 374 S.E.2d 116 (1988) cert.denied, 324 N.C. 337, 378 S.E.2d 799 (1989). Plaintiff has not proven by the greater weight of the competent, credible evidence of record that his back condition was the result of a falling incident on December 20, 1993. Plaintiff's back condition developed gradually over a number of months and not contemporaneously during a judicially cognizable time. Griffithv. Thomasville Furniture Co., 65 N.C. App. 369,309 S.E.2d 277(1983) cert. denied 310 N.C. 477, 312 S.E.2d 886(1984);Richards v. Town of Valdese, 92 N.C. App. at 225,374 S.E.2d at 118-19.
2. Plaintiff did not sustain an injury by accident by way of specific traumatic incident when he fell on his buttocks while working for defendant-employer on or about December 20, 1993. Thus, plaintiff is not entitled to benefits under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2. Degenerative disc disease, which is gradual deterioration of the spine and occurs over time, is specifically excluded as a result of specific traumatic incident. Griffith v. Thomasville FurnitureCo., 65 N.C. App. 369, 309 S.E.2d 277(1983) cert. denied 310 N.C. 477,312 S.E.2d 886(1984).
********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Plaintiff's claim for benefits under the Workers' Compensation Act must be and hereby is DENIED.
3. Each side shall pay its own costs.
 S/ _______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ___________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ___________________ LAURA K. MAVRETIC COMMISSIONER
BSB:md